UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY OUTAR,

       Plaintiff,

v.                                 1:05-CV-704 (NPM)

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

-------------------------------------------------------------------------------------------------------

APPEARANCES                             OF COUNSEL

ANTHONY OUTAR
24 Hawk Street, Apartment 1
Schenectady, New York 12307

WILLIAM H. PEASE, AUSA         WILLIAM H. PEASE, ESQ.
Attorney for Defendant
Office of the U.S. Attorney
100 South Clinton Street
Syracuse, New York 13261-7198

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

On June 6, 2005, plaintiff Anthony Outar (the "plaintiff") filed this appeal

pursuant to § 205(g) of the Social Security Act (the "Act"), codified at 42 U.S.C.

§§ 405(g), seeking review of the final decision of the defendant Commissioner of

the Social Security Administration ("defendant") denying plaintiff's claim for disability insurance benefits ("DIB") under the Act.  A summons was issued for the defendant which was executed and returned on July 7, 2005.  On October 6, 2005, pursuant to General Order 18[1], the defendant filed an answer and a copy of the administrative transcript.  On February 8, 2006, the plaintiff filed a response to the defendant's answer, which was returned by this court as not authorized.  However, due to his pro se status, the court did allow the plaintiff until March 8, 2006 to file a brief in this matter.

On August 4, 2006, Magistrate Judge Treece issued another order extending the time for plaintiff to file his brief to September 15, 2006.  Judge Treece stressed that no further extensions would be granted, and warned the plaintiff that "failure to file a brief as required by this order will result in consideration of this appeal without the benefit of plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of facts and subsequent dismissal of your appeal." See General Order 18 at 4.  Judge Treece also warned the plaintiff that "in accordance with the Federal Rules of Civil Procedure and the Local Rules of this District, his continued inaction in this matter could result in the Court

---

[1] General Order 18 of the N.D.N.Y. sets forth the procedures to be followed when appealing a denial of Social Security benefits.

dismissing his civil action," citing Fed.R.Civ.P.41(b)[2] and N.Y.N.D.L.R. 41.2(a).[3] (Doc. No. 11). The order was served upon the plaintiff by regular mail, along with a copy of General Order 18. This appeal was reassigned on November 20, 2006. To date, the court has received no response from the plaintiff.

In this action, the court considers the plaintiff's pro se status in declining to enter a sua sponte dismissal. In addition, the defendants have not moved to dismiss for failure to prosecute or failure to comply with an order of the court pursuant to Rule 41(b). Accordingly, the court will consider the plaintiff's appeal without benefit of his arguments. For the reasons set forth below, the plaintiff's appeal will be dismissed.

**I.    FACTS**

Due to the absence of a plaintiff's brief, the court thoroughly reviewed the plaintiff's administrative record in its entirety. The following is a brief recitation of the facts as discerned by that review. At the time of the Administrative Law Judge's ("ALJ") decision, the plaintiff was a 28-year old male, with a 12th grade

---

[2]    Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure , the court is permitted to sua sponte dismiss this proceeding for failure to prosecute. Rule 41(b) permits the defendants to move for dismissal for failure "to prosecute or to comply with ... an order of the court." (West 2007).

[3]    Local Rule 41.2 states in pertinent part that "[w]henever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge shall order it dismissed." N.Y.N.D.L.R. 41.2(a).

education. His past work experience included employment as a cashier, VCR and cable box repairman, and as a machinist. (R. at 13[4]). The court notes the following timeline of the plaintiff's injuries: (1) in April of 2001, plaintiff suffered a work-related elbow injury caused by running a forklift with a throttle attached to the steering wheel; (2) plaintiff suffered a back injury during an altercation at work; (3) plaintiff reinjured his back in a work-related injury while working as a machinist, when he attempted to put a sleeve into a lathe (R. at 119); and (4) plaintiff injured his neck and knee in a motor vehicle accident when the car he was driving was struck by an ambulance. (R. at 94-95).

In addition to the plaintiff's litany of complaints of physical impairments (back, neck, head and elbow pain; indigestion, hearing loss, exertional dyspnea, ankle swelling, weight changes, and fatigue, among other things), the record is rife with evidence of the plaintiff's non-exertional impairments. Plaintiff's psychiatric report includes, <u>inter alia</u>, evidence of long-term depression, paranoia,[5] sleep disturbance, chronic stress and anxiety, irritability, and feelings of hopelessness

---

[4] Unless otherwise noted, references ("R. at __") are to the administrative record.

[5] In particular, the plaintiff complained that nobody believes that he has medical problems. He complained of a conspiracy in which people are following him and going to the doctor's office and telling the doctor that he is lying; when he gets there, the doctor evaluates him and says nothing is wrong with him. Plaintiff stated his belief that there are some lawyers involved in this conspiracy as well. (R. at 158-59).

and worthlessness. Plaintiff also complained of panic attacks, including heart palpitations, nausea, sweating, dizziness, difficulty breathing and chest pains. The examining licensed psychologist, Annette Payne, Ph.D., noted that the plaintiff was cooperative, but very irritable and evasive; his social skills were fair to poor, his cognitive functioning was in the low average range, and his insight and judgment was listed as very poor. Overall, Dr. Payne listed the plaintiff's prognosis as poor. (R. at 155-59). The administrative record contains evidence from various physicians that, <u>inter</u> <u>alia</u>, the plaintiff was "borderline confrontational" (R. at 149), that there was "great discrepancy between his subjective complaints and the lack of abnormal objective findings" (R. at 126), and that "the patient is advised in the strongest terms to follow up with a mental health professional." (R. at 146).

The record reveals the efforts of several doctors ordering various diagnostic tests, in order to find the source of the plaintiff's pain. In several instances, as stated above, the doctors noted inconsistencies between the pain patient complained of, and the lack of abnormal objective findings from these tests. Conversely, Dr. George Shelton raised the possibility of chronic pain syndrome as the basis of the plaintiff's pain. (R. at 146). Dr. Shelton recommended mental health care specializing in chronic pain syndrome. (R. at 16).

## II.     DISCUSSION

### A.     Standard of review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted). See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Act must be

liberally applied, for it is a remedial statute intended to include [,] not exclude."

<u>Cruz v. Sullivan</u>, 912 F.2d 8, 11 (2d Cir. 1990).

An individual is considered disabled for purposes of his or her eligibility for Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security Disability to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned

7

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity[6] to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine

---

[6] Residual functional capacity ("RFC") refers to what a claimant can still do in a work setting despite any physical and/or mental limitations caused by his or her impairments and any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the relevant evidence in the case record.  See 20 C.F.R. § 404.1545 (a)(1).

whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

In determining the plaintiff's residual functional capacity ("RFC"), the ALJ concluded that the plaintiff's demeanor at the hearing did not reflect the presence of incapacitating pain. The ALJ found, inter alia, that the plaintiff retained the RFC to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds; that plaintiff can sit about six hours and stand and/or walk about six hours; that plaintiff has no limitations pushing and/or pulling or fine and gross manipulation; that plaintiff can occasionally climb, balance, stoop. kneel, crouch, and crawl; that plaintiff is able to understand, remember and carry out routine simple tasks in a low stress environment; and that plaintiff's "[c]ontact with the public and co-workers should be limited." R. at 23.

The ALJ addressed the plaintiff's non-exertional impairments by stating that "Dr. Payne noted [plaintiff's] memory, concentration and attention were mildly impaired, he was able to follow and understand simple directions and instructions and consistently perform simple routine tasks; but he would have difficulties relating to others and to stress." (R. at 18). The ALJ did not discuss Dr. Payne's

more serious assessment, set forth supra.  The ALJ went on to say that "[t]he undersigned notes he [the plaintiff] has no psychiatric hospitalizations and is under no psychiatric care.  He has refused to seek treatment for his depression and anxiety ...."  The ALJ concluded that the plaintiff had no marked limitations in daily activities, social functioning or concentration, persistence and pace. Id.

The ALJ utilized a vocational expert to determine whether jobs exist in the national economy for an individual of the plaintiff's age, education, past relevant work experience and RFC as determined by the ALJ.  Despite the ALJ's recommendation that plaintiff's contact with the public and co-workers should be limited, as well as substantial evidence that the plaintiff is, or believes himself to be in chronic pain, the vocational expert testified that the plaintiff could work as a parking lot attendant or an electronics assembler, jobs requiring that the plaintiff be in contact with the public and/or coworkers.

In sum, the court finds that the ALJ applied the proper legal standards in his fifth-step analysis.  The court has some concern, however, in adopting the vocational expert's opinion that the plaintiff could arguably work as a parking lot attendant or electronics assembler.  Although the record does not indicate what consideration the ALJ gave his own prior assessment that plaintiff's contact with the public and co-workers should be limited, the plaintiff did not file any

information to the contrary. Accordingly, the court is persuaded to adhere to the ALJ's decision to reject the plaintiff's appeal, and affirm the ALJ's determination that the plaintiff is capable of working in the national economy.

## III.  CONCLUSION

For the reasons set forth in the body of this opinion, the ALJ's decision denying plaintiff's disability benefits is hereby AFFIRMED and the plaintiff's appeal is DISMISSED in its entirety.

SO ORDERED.

September 12, 2007

_____
Neal P. McCurn
Senior U.S. District Judge